**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0931-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

STEFAUN Z. CORLEY,

    Defendant-Appellant.

_____

Argued November 19, 2025 – Decided August 12, 2026

Before Judges Currier, Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 21-07-0539.

Rachel A. Neckes, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Rachel A. Neckes, of counsel and on the briefs).

Michael C. Mellon, Assistant Prosecutor, argued the cause for respondent (Andrew B. Johns, Gloucester County Prosecutor, attorney; Michael C. Mellon, on the brief).

PER CURIAM

After a jury trial, defendant, Stefaun Z. Corley, was convicted of murder and weapons charges. The trial court sentenced him to an aggregate term of forty-years in state prison. He appeals his convictions, alleging that his rights to present a complete defense and confront witnesses were violated, and that the trial court improperly refused to instruct the jury on conspiracy to commit aggravated assault. He also alleges prosecutorial misconduct, cumulative error, and that his sentence was improper.

We affirm, however, we remand for the limited purpose of correcting the judgment of conviction to merge one of the weapons charges into the murder conviction.

I.

A.

We summarize the pertinent facts from the record adduced at defendant's jury trial.

On Thanksgiving evening, November 26, 2020, Atiba Rose was shot and killed on the porch of his family home in Woodbury. The State alleged that Stefaun Corley was the shooter. The evidence established that co-defendant Antwonne Hutchins drove Corley and brothers Terrell and Tyriq Bundy to the

A-0931-23

Rose residence. Terrell harbored animosity toward Isaac Rose, Atiba's brother, motivated by a prior assault and a romantic rivalry, and planned, with Tyriq, to attack Isaac. During the assault on Isaac, Atiba was shot and killed. Corley denied being the shooter.[1]

Surveillance footage showed Hutchins's car parked near the Rose residence. Terrell, Tyriq, and Corley exited the car and approached the house. The home security camera captured Terrell and Tyriq on the porch but did not record the shooting. Atiba answered the door, and after summoning Isaac, Terrell and Tyriq began assaulting Isaac. Atiba returned to the porch and was shot in the abdomen. Both Terrell and Tyriq fled, and surveillance showed three individuals returning to Hutchins's car.

Isaac testified he did not see the shooter, as his vision was obscured during the assault. Terrell also did not see who fired the gun, stating Corley was present but not on the porch. Myla Dombkowski, Atiba's sister, saw only two people on the porch and reported that one pointed a gun at her. Police recovered shell casings outside the house and a projectile near the door but did not conduct a trajectory analysis.

---

[1] We use first names in some instances to avoid confusion, as two of the witnesses share a surname. We intend no disrespect.

A-0931-23

Cell phone extractions revealed Corley had sent an Instagram message the day before the incident stating, "You know I just bought a gun," and had searched for news about the shooting after the events. A video from Terrell's phone showed him holding a gun and pointing it at the camera two weeks before the shooting.

B.

On July 21, 2021, a Gloucester County grand jury charged defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2) (count one); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count two); and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count three).

The remaining counts of the indictment charged co-defendants Tyriq and Hutchins with first-degree conspiracy to commit murder (counts five and six) and charged Tyriq individually with third-degree aggravated assault (count four). A juvenile co-defendant, Terrell, was separately waived to adult court and charged with first-degree conspiracy to commit murder and third-degree aggravated assault.

In March 2022, defendant's first trial ended in a mistrial.

4

On May 4, 2022, Terrell pled guilty to aggravated assault and was sentenced to probation in exchange for testifying against his co-defendants. Under the plea agreement, Terrell would be remanded to the Family Division following resolution of the charges against his co-defendants.

On May 22, 2023, Hutchins pled guilty to harassment, a disorderly persons offense, and received a fines-only sentence in exchange for his testimony. Pursuant to the plea, sentencing was postponed until after defendant's second trial.

That same day, the court heard defendant's motion to permit defensive use of prior bad acts evidence. Defendant wanted to cross-examine the witnesses and use the prior bad acts evidence to suggest motive of the other actors to commit the crimes. The trial court heard the motion and denied it, issuing an oral and written statement of reasons. The trial court found introducing prior bad acts evidence could mislead the jury and unduly prejudice the State. The court found defendant failed to establish the four-element standard in State v. Cofield, 127 N.J. 328, 338 (1992). The court found the evidence was relevant to a material issue and the crimes were reasonably similar, but found they were not substantially close in time nor was there clear and convincing evidence the witnesses committed the prior acts.

A-0931-23

On June 1, 2023, defendant's second jury trial began. During defendant's cross-examination of Terrell, the trial court sustained the State's objection to counsel's question regarding Terrell's potential sentencing exposure. However, the next day, after defendant's closing argument, the court instructed the jury that it could consider "the question by defense counsel and response, if any, by Mr. Hutchins."[2] On June 9, 2023, the jury convicted defendant of all three counts.

On August 29, 2023, the court sentenced defendant to a forty-year term of imprisonment for first-degree murder, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court merged counts two and three but still imposed concurrent sentences of five years on each count and the corresponding fines and fees.

Defendant raises the following issues on appeal.

> POINT I
>
> [DEFENDANT'S] CONVICTIONS MUST BE REVERSED BECAUSE THE COURT BARRED HIM FROM QUESTIONING A COOPERATING CO-DEFENDANT ON HIS PENAL EXPOSURE AND A RELATED CRIMINAL INVESTIGATION.

---

[2] In the factual predicate to the instruction, the trial court mistakenly stated to the jury that counsel asked Hutchins this question during cross-examination, rather than Terrell.

A-0931-23

A. The Trial Court Erroneously Prevented Exploration Of Terrell's Sentencing Exposure.

B. The Court Erroneously Precluded Questioning On A Related Investigation In Which Terrell And Tyriq Were Primary Suspects.

POINT II

THE COURT ERRONEOUSLY REFUSED TO INSTRUCT THE JURY ON THE REQUESTED RELATED OFFENSE OF CONSPIRACY TO COMMIT AGGRAVATED ASSAULT, DEPRIVING [DEFENDANT] OF A FAIR TRIAL.

POINT III

THE STATE IMPROPERLY BOLSTERED ITS CASE WITH UNSUPPORTED ARGUMENTS REGARDING THE LOCATION OF THE SHOOTER. (Not raised below)

POINT IV

THE CUMULATIVE EFFECT OF THE ERRORS DEPRIVED [DEFENDANT] OF A FAIR TRIAL AND REQUIRE REVERSAL. (Not raised below)

POINT V

A REMAND IS REQUIRED BECAUSE [DEFENDANT'S] SENTENCE IS EXCESSIVE.

II.

A.

A trial court's evidentiary rulings are reviewed under the abuse of discretion standard. State v. Hannah, 263 N.J. 411, 433 (2026). An abuse of discretion arises when a "a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Taylor, 261 N.J. 440, 449 (2025) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). An appellate court must not "substitute [its] judgment unless the evidentiary ruling is 'so wide of the mark' that it constitutes 'a clear error in judgment.'" State v. Garcia, 245 N.J. 412, 430 (2021) (quoting State v. Medina, 242 N.J. 397, 412 (2020)).

"A trial court's 'discretion is abused when relevant evidence offered . . . and necessary for a fair trial is kept from the jury.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting State v. Cope, 224 N.J. 530, 544-55 (2016)).

B.

"Appropriate and proper jury instructions are essential for a fair trial." State v. Ellison, 482 N.J. Super. 357, 383 (App. Div. 2025). A reviewing court must evaluate the jury charge in its entirety to determine its overall effect. State v. McKinney, 223 N.J. 475, 494 (2015). When we review jury instructions, we

8

must examine the charge in its entirety "to ascertain whether it is either ambiguous and misleading or fairly sets forth the controlling legal principles relevant to the facts of the case." State v. Belliard, 415 N.J. Super. 51, 67 (App. Div. 2010) (quoting State v. LaBrutto, 114 N.J. 187, 204 (1989)). The "error must be evaluated in light of the overall strength of the State's case." Ellison, 482 N.J. Super. at 383 (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)) (internal quotation marks omitted).

C.

We evaluate a prosecutor's challenged closing remarks not in isolation but in the context of the whole summation. State v. R.A.M., 482 N.J. Super. 439, 452 (App. Div. 2025) (citing State v. Atwater, 400 N.J. Super. 319, 335 (App. Div. 2008)). We "must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred." State v. Williams, 244 N.J. 592, 608 (2021) (quoting State v. Frost, 158 N.J. 76, 83 (1999)). "'[E]ven when a prosecutor's remarks stray over the line of permissible commentary, our inquiry does not end. . . .' Rather, we must weigh 'the severity of the misconduct and its prejudicial effect on the defendant's right to a fair trial . . . .'" Ibid. (internal citations omitted) (first quoting State v. McNeil-Thomas, 238 N.J. 256, 275 (2019); and then quoting State v. Wakefield,

190 N.J. 397, 437 (2007)). We will reverse a conviction and grant a new trial for prosecutorial misconduct "[o]nly when the prosecutor's conduct in summation so 'substantially prejudice[s] the defendant's fundamental right to have the jury fairly evaluate the merits of his defense . . . .'" Garcia, 245 N.J. at 436 (second alteration in original) (quoting State v. Bucanis, 26 N.J. 45, 56 (1958)).

"Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial. Failure to make a timely objection indicates that defense counsel did not believe the remarks were prejudicial at the time they were made." State v. Timmendequas, 161 N.J. 515, 576 (1999) (citation omitted). "If defense counsel fails to object contemporaneously to the prosecutor's comments, 'the reviewing court may infer that counsel did not consider the remarks to be inappropriate.'" State v. Clark, 251 N.J. 266, 290 (2022) (quoting State v. Vasquez, 265 N.J. Super. 528, 560 (App. Div. 1993)).

III.

A.

Defendant first argues the trial court erred by barring him from questioning Terrell, a cooperating prosecution witness, about his pre-plea sentencing exposure and a separate criminal investigation. Defendant claims

the error harmed his ability to attack Terrell's credibility before the jury in different ways. First, the court violated State v. Jackson, 243 N.J. 52 (2020), by prohibiting trial counsel from conducting an unfettered inquiry into Terrell's sentencing exposure. Second, defendant argues the trial court prevented him from questioning Terrell about a stabbing investigation, inconsistent with our holding in State v. Parsons, 341 N.J. Super. 448 (App. Div. 2001). Defendant contends the trial court's evidentiary rulings prevented him from arguing Terrell had incentive to cooperate with the State and shift blame away from him and his brother, Tyriq. He further asserts the court prevented him from fully confronting the witness, violating his right to due process, and denying him a fair trial.

We consider the relevant law.

Both the Federal and State Constitutions guarantee that in a criminal trial, the accused has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. "A defendant's right to confront and effectively cross-examine the State's witnesses is essential to the due process right to a 'fair opportunity to defend against the State's accusations,' and is one of 'the minimum essentials of a fair trial.'" State v. Gilchrist, 381 N.J. Super. 138, 144 (App. Div. 2005) (quoting Chambers v. Mississippi, 410 U.S. 284, 294 (1973)).

11

Our Supreme Court has long held "[d]efendants 'must be afforded the opportunity through effective cross-examination to show bias on the part of adverse state witnesses.'" State v. Higgs, 253 N.J. 333, 361 (2023) (quoting State v. Sugar, 100 N.J. 214, 230 (1985)).

We have noted "[t]he law in New Jersey concerning the constitutional right of the defendant to explore potential bias on the part of a prosecution witness is even broader than that which exists in federal courts," and if a witness has a subjective belief that favorable treatment may result from the testimony given, then exploration of that fact is appropriate. State v. Holmes, 290 N.J. Super. 302, 313 (App. Div. 1996). See also State v. Mazur, 158 N.J. Super. 89, 104 (App. Div. 1978) (noting "formal arrangements with the prosecutor are not a prerequisite for showing bias," so any expectations of favorable treatment resulting from the testimony "may be shown as evidence of bias").

Notwithstanding these general principles, "[t]he right to cross-examine for bias, 'however, is not absolute, and may, in appropriate circumstances, bow to competing interests.'" Higgs, 253 N.J. at 361 (quoting State v. Budis, 125 N.J. 519, 531 (1991)). Rather, "[t]he Confrontation clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." State v.

Ramirez, 252 N.J. 277, 305-06 (2022) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)). "In general, trial judges 'retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, . . . [or] the witness' safety.'" Id. at 306 (quoting Budis, 125 N.J. at 532). "The trial court is charged to evaluate whether the circumstances fairly support an inference of bias, and to consider any concerns raised by the proposed inquiry." State v. Bass, 224 N.J. 285, 303 (2016).

Inquiry concerning a plea bargain and the sentencing exposure a prosecution witness faced has been held to be an appropriate topic for cross-examination. Jackson, 243 N.J. at 71. While a decision to bar cross-examination for bias of an adverse witness may constitute error, it may be considered harmless where it can be demonstrated such a decision was not "clearly capable of producing an unjust result." State v. Castagna, 187 N.J. 293, 312 (2006) (quoting R. 2:10-2).[3] "[T]he same ultimate standard applies whether the error was objected to below or whether the error was first claimed upon appeal." Ibid. (quoting State v. Macon, 57 N.J. 325, 337-38 (1971)).

---

[3] Courts will disregard "[a]ny error or omission [by the trial court] . . . unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10–2.

Jackson is instructive. There, the trial court barred defense counsel from cross-examining Clarke, a co-defendant turned prosecution witness, regarding his maximum sentencing exposure, finding it could prejudice the jury. 243 N.J. at 59. The trial court did, however, permit defense counsel to question Clarke regarding the initial plea offer of three years' imprisonment and the final plea agreement of 180 days' imprisonment in county jail, plus probation. Ibid. Further, the trial court permitted the State to examine the low end of the sentencing range, which led to testimony revealing "that Clarke had not received 'such a good deal.'" Ibid. On appeal, Jackson argued the trial court's limitation on Clarke's cross-examination "deprived him of his constitutional right to confront a key adverse witness." Ibid.

In reversing our decision affirming the defendant's conviction, our Supreme Court concluded "the trial court erred when it barred defense counsel from pursuing the line of questioning during cross-examination concerning Clarke's plea bargain and his sentencing exposure." Id. at 71. The Court concluded "[d]efense counsel had the right to explore potential bias on Clarke's part in his role as the prosecution's key witness." Ibid. The Court stated "[t]he jury should have had full access to Clarke's plea agreement history through the defense counsel's unfettered examination of that history." Id. at 59.

14

The Court explained it was required to "balance defendant's right to confront Clarke with the full exposure of his potential sentence against the trial court's concern that the jury may deadlock or find defendant not guilty if it inferred his sentencing exposure from the charges Clarke faced." Id. at 69. In doing so, the Court determined the "[d]efendant was entitled to question Clarke about his subjective understanding of the benefit of his plea bargain, including what sentence he faced and what was offered in the plea agreement." Id. at 70.

The Court cautioned about limiting cross-examination regarding a witness's sentencing exposure:

> We do not favor a process in which trial judges perform a generalized gatekeeping function and try to decide whether cross-examination would adequately convey enough information about a witness's credibility without allowing questions about the witness's sentencing range. That said, there is still a place for objections under N.J.R.E. 403. If, for example, cross-examination improperly suggested to the jury that a witness would receive consecutive sentences on multiple counts that would instead merge at sentencing, the judge could properly curtail that line of questioning.
>
> [Id. at 72.]

Applying the law to these facts, we conclude this record presents circumstances different from the ones the Supreme Court considered in Jackson.

15

Here, Terrell testified at trial on direct examination about his understanding of the plea agreement and what he was offered as part of the plea. He explained that as part of the plea agreement he received "[a] year time served, plus probation" sentence in exchange for his testimony as a prosecution witness.

The following colloquy occurred on cross-examination, regarding Terrell's understanding of the initial charges against him, the potential sentencing of those charges, his understanding of the plea agreement, and the plea agreement itself:

> [Counsel:]   And let's [go] over your plea agreement. You were initially charged with being involved in a homicide, right?
>
> [Terrell:]    Yes.
>
> [Counsel:] Okay.  And do you remember what you were facing when you were initially charged?
>
> [Terrell:]    How much time I received?
>
> [Counsel:]  Yes.
>
> [Terrell:]    I don't recall.  I don't remember.
>
> [Counsel:]   It was upwards of over 25 years?
>
> [State:]      Objection.
>
> THE COURT:     Sustained.
>
> [Terrell:]    I believe so.

A-0931-23

> [State:]     Your Honor.
>
> THE COURT:     That answer will be struck from the jury. You did not hear that, it should not have been answered, it was struck by the [c]ourt. You should ignore that comment, Ladies and Gentlemen.
>
>      Please proceed, [counsel].
>
> [Counsel:] Were you charged with conspiracy to commit homicide?
>
> [Terrell:]  Yes.
>
> [Counsel:]   But you pled to a third degree agg[ravated] assault, is that not true?
>
> [Terrell:]     That's true.
>
> [Counsel:]   Okay. And you testified here in a separate hearing earlier in the year, correct?
>
>      . . . .
>
> [Terrell:]     Yes.
>
> [Counsel:]   Okay. So part of your plea that [the prosecutor] went over with you on direct was you were to testify truthfully, right?
>
> [Terrell:]     Yes.

This cross-examination colloquy differs from the cross-examination issues presented in <u>Jackson</u>. Here, unlike in <u>Jackson</u>, counsel was permitted to, and in fact did, question Terrell about his subjective understanding of the benefit of his

17

plea bargain, including what sentence he faced. Terrell responded to counsel's questions by articulating his understanding of his sentencing exposure—specifically, that he did not recall or remember his initial sentencing exposures. It was only after counsel asked Terrell if he had faced "upwards of over 25 years" that the State objected. The trial court sustained the objection and struck Terrell's response. However, the court simply sustained the objection without more; it did not rule the line of questioning improper or otherwise re-direct it. In fact, counsel proceeded to question Terrell about the initial charges filed against him, as well as his plea bargain, without further objection.

The next day, the court changed its position on sustaining the State's objection to counsel's questioning of Terrell on cross:

> Ladies and gentlemen, yesterday, defense counsel asked a question posed to Mr. Hutchins [sic] regarding his understanding of the charges he faced. I initially sustained an objection by the State. I have reconsidered my ruling and instruct you that you may consider the question by defense counsel and response, if any, by Mr. Hutchins. It is a proper question by cross-examination to ask a witness what their interest is in the outcome in the case and any consequences they might face and being charged with a crime. In this case, Mr. Hutchins and Mr. Terrell Bundy were charged with conspiracy to commit murder, which has a sentencing range of 10 to 20 years. In exchange for their plea, they agreed to testify in this trial. You are permitted to consider the witness's plea bargain and his sentencing

18

exposure in assessing his credibility, motive and testifying and bias, if any. Okay? Thank you.

While we note here the steps the court took to instruct the jury that they were permitted to "consider the witness's plea bargain and his sentencing exposure in assessing his credibility, motive and testifying and bias, if any," the record also shows counsel seized opportunities during opening and closing statements to emphasize this very point before the jury. During openings, counsel stated:

> You also will learn that Terrell Bundy was facing the same charges as everyone else that was involved, conspiracy to commit murder. Except Terrell Bundy, you will learn, got a sweetheart deal to come in court and tell you on the witness stand that it was somebody else. Not his brother, not himself, somebody else. A State's witness will tell you they saw Terrell Bundy and Tyriq Bundy on that porch.

> [(Emphasis added).]

During closings, counsel stated:

> It may be obvious why Terrell Bundy had a motive to lie to you. Terrell Bundy wanted to protect himself and his brother. You heard that he received a sweetheart deal because he, too, faced serious charges. Very serious charges. Except in exchange for those charges, he pled to a lesser offense and agreed to come testify for the State. . . .

> [(Emphasis added).]

A-0931-23

The record shows Terrell was questioned about his own understanding of his plea bargain, as well as his pre-plea sentencing exposure, and Terrell answered counsel's questions. Notwithstanding Terrell's failure to recall his pre-plea sentencing exposure, and counsel's misrepresentation regarding the same, the court instructed the jury about Terrell's actual sentencing exposure, as well as the fact that the jury could consider that information in assessing Terrell's credibility, motive to testify, and bias. We "presume that the jury adhered to the court's instruction." State v. Feaster, 156 N.J. 1, 65 (1998). Further, counsel zealously argued that Terrell was biased and had motive to lie, and that he traded his testimony for a "sweetheart" deal.

We conclude defendant's constitutional right to thoroughly cross-examine and test Terrell for bias was not violated by the trial court. Sugar, 100 N.J. at 230. To the extent that the court's sustaining of the State's objection was error, and we do not think that it was, it was harmless error, which was remedied by the curative instruction. Castagna, 187 N.J. at 312 (quoting R. 2:10-2).

B.

Defendant next argues the trial court abused its discretion and again violated his constitutional right to confront witnesses against him when it barred counsel from cross-examining Terrell about a separate assault investigation. He

20

contends the court's ruling precluded him from fully exploring Terrell's bias before the jury. Defendant also claims the court erred by misapplying Rule 404(b) to reach its decision to exclude this line of questioning.

"To be admissible at trial, evidence must be relevant—that is, it must have 'a tendency in reason to prove or disprove any fact of consequence to the determination of the action.'" Sanchez-Medina, 231 N.J. at 462 (quoting N.J.R.E. 401). The court's "inquiry focuses on 'the logical connection between the proffered evidence and a fact in issue,'" and "[e]vidence need not be dispositive or even strongly probative in order to clear the relevancy bar." State v. Buckley, 216 N.J. 249, 261 (2013) (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 15 (2004)). The court should ask "whether the thing sought to be established is more logical with the evidence than without it." Ibid. (quoting State v. Coruzzi, 189 N.J. Super. 273, 302 (App. Div. 1983)).

"Even if relevant, 'evidence may be excluded if its probative value is substantially outweighed by the risk of . . . undue prejudice, confusion of issues, or misleading the jury.'" Sanchez-Medina, 231 N.J. at 462 (quoting N.J.R.E. 403). Probative value "is the tendency of the evidence to establish the proposition that it is offered to prove." State v. DiNapoli, 264 N.J. 18, 33 (2026) (quoting Buckley, 216 N.J. at 261). To be admissible, evidence "must be

A-0931-23

'relevant to a material issue,' and its probative value 'must not be outweighed by its apparent prejudice.'" Sanchez-Medina, 231 N.J. at 462 (quoting Cofield, 127 N.J. at 338).

Before trial, defendant attempted to introduce, through cross-examination, evidence about a stabbing incident which took place on November 1, 2020. Defendant sought to imply motive on the part of Terrell and Tyriq that they were the ones to commit the crimes, rather than defendant. The court held argument on defendant's motion on May 22, 2023. That same day, the court issued an evidentiary ruling, supported by a written statement of reasons where it found the jury would be misled by introduction of the unrelated assault investigation. The court also found the introduction would be unduly prejudicial. It reasoned:

> [T]he [c]ourt is troubled by the prospect of introducing this evidence to the jury because it is potentially prejudicial and may cause the jury to base their decision on something other than the established propositions of the case. The suggestion implicit in the introduction of this evidence, presumably, would be that Terrell Bundy or Tyriq Bundy had motive to kill Isaac Rose. However, neither Terrell nor Tyriq Bundy were charged for this stabbing and the parties involved are not actively cooperating with law enforcement to investigate this incident. Moreover, [d]efendant is not involved in the stabbing incident.
>
> . . . .

It would be problematic to introduce this prior incident to the jury as probable cause does not appear to exist as no individuals were charged for this stabbing. It may carry implicit suggestions to the jury that are not warranted based on the status of the incident, which also carries with it a possibility of misleading the jury. The information that is known regarding the incident is limited and speculative, and there is no concrete information as to suspects. Due to the incomplete and speculative nature of the incident, and because no individuals were charged, it appears to the [c]ourt that introducing this incident to the jury through the form of witness examination would detour the jury to consideration of motive on the part of Terrell Bundy in an earlier stabbing distracting from the question of who fired the gun killing Atiba Rose. The stabbing incident is simply not relevant to [defendant].

. . . .

The [c]ourt is also concerned that examination of this incident may mislead the jury to confuse their objective. . . . [E]ven relevant material may be excluded if it clouds the jury's judgment. . . . As such, the [c]ourt is concerned that examination of this incident would lead the jury astray.

Next, the trial court performed a <u>Cofield</u> analysis, concluding that evidence of the unrelated assault investigation would be excluded under the third prong of <u>Cofield</u>, because there was "no clear and convincing evidence of any individual as the perpetrator of this stabbing," and therefore evidence of "the incident [could not] be introduced under N.J.R.E. 404(b)."

23

The Cofield analysis was not needed to decide this relevancy question. "When a person charged with a criminal offense seeks to use other-crimes evidence defensively, the Cofield standard does not govern because 'an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made.'" State v. Weaver, 219 N.J. 131, 150 (2014) (quoting State v. Garfole, 76 N.J. 445, 453 (1978)). The court's Cofield discussion had no bearing on its sound Rule 403 analysis, which formed the proper basis for its decision to exclude the evidence. Even if Cofield was the basis for the trial court's order, and we conclude it was not, an order or judgment may nevertheless be affirmed on appeal if it is correct, even though the judge gave the wrong reasons for it. State v. Scott, 229 N.J. 469, 479 (2017).

We discern no error in the trial court's exclusion of evidence regarding the unrelated assault investigation.

## C.

Defendant next claims the trial court erred by declining to instruct the jury on the requested "related offense" of conspiracy to commit aggravated assault. At trial, defendant sought a jury charge of conspiracy to commit aggravated assault as a lesser-included offense. On appeal, defendant now argues the trial

court should have instructed the jury on conspiracy to commit aggravated assault as a "related offense," claiming trial counsel "explicitly raised the charge to the trial court and explained the rational basis for requesting it." Citing State v. Alexander, 233 N.J. 132, 144-45 (2018), defendant argues that such a "related offense" charge was appropriate because he met the necessary requirements, specifically: (1) he requested and consented to the related charge; and (2) there is a rational basis in the evidence to sustain the related offense. We are unconvinced.

Our jurisprudence has always placed extraordinary value on administering appropriate and proper jury charges to maintain the right to trial by jury. State v. Bragg, 260 N.J. 387, 405 (2025). "An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." McKinney, 223 N.J. at 495 (quoting State v. Afanador, 151 N.J. 41, 54 (1997)). "Correct jury instructions are 'at the heart of the proper execution of the jury function in a criminal trial.'" State v. Cagno, 211 N.J. 488, 514 (2012) (quoting Afanador, 151 N.J. at 54). The trial judge must explain the law as it relates to the facts and issues of the case. State v. Baum, 224 N.J. 147, 159 (2016).

"It is the independent duty of the court to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case,

irrespective of the particular language suggested by either party." State v. Scharf, 225 N.J. 547, 580 (2016) (quoting State v. Reddish, 181 N.J. 608, 613 (2004)). Indeed, every "request must concern legal and factual issues that have been properly raised in the proceedings. State v. Green, 86 N.J. 281, 290 (1981). Further, "[e]very request must state the correct principle of applicable law in a manner that is tailored to the facts of the case and is not misleading." Ibid. "The charge as a whole must be accurate." State v. Singleton, 211 N.J. 157, 182 (2012). However, "[n]o party is entitled to have the jury charged in his or her own words; all that is necessary is that the charge as a whole be accurate." Baum, 224 N.J. at 167 (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

i.

We first consider defendant's "lesser-included" offense charges raised at trial.

At the charge conference, defense counsel requested the court charge the jury with the "lesser-included offenses" of conspiracy to commit aggravated assault and conspiracy to commit assault via bodily injury. Defendant's rationale was the evidence clearly showed that Terrell and Tyriq intended to assault Isaac, the victim's brother. The court, noting the victim, Atiba, was dead, found that "there's no rational debate about the degree of injury," and determined

A-0931-23

that the only charge against defendant which could be subsumed under the murder charge was aggravated manslaughter. The trial court also found an instruction, which suggested to the jury that a finding of conspiracy to commit assault against Isaac would be a proper trial outcome, was inappropriate, because such a result would not account for the death of Atiba.

We turn to the relevant law.

We "differentiate between those included offense charges requested by the State and those requested by the defense." State v. Thomas, 187 N.J. 119, 129 (2006) (quoting State v. Brent, 137 N.J. 107, 115 (1994)). When an included offense charge is requested by a defendant, "the law's concern is . . . whether the evidence provides a rational basis for the charge[.]" Ibid. (quoting Brent, 137 N.J. at 116). See also N.J.S.A. 2C:1-8(e) ("The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."). For that reason,

> when a defendant requests a charge to the jury on a lesser offense, our case law has held that whether the lesser offense is strictly "included" in the greater offense, as defined by N.J.S.A. 2C:1-8d, is less important to a trial court's determination to charge the offense than whether the evidence presents a rational basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser.

A-0931-23

[Thomas, at 131-32 (quoting Brent, 137 N.J. at 117).]

A defendant may be convicted of an offense which is "included" in a charged offense, whether or not the offense is an indictable offense. N.J.S.A. 2C:1-8(d). Specifically, N.J.S.A. 2C:1-8(d) provides that an offense is considered included when:

> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or
>
> (3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.

"Whether an offense is an included offense of another charge requires a comparison of the statutory elements of each charge." Thomas, 187 N.J. at 129. An offense is included "where the proof required to establish a greater offense is also sufficient to establish every element of a lesser offense," or "where two offenses are the same but a lesser degree of culpability is required to establish the lesser offense." Id. at 129-30 (quoting State v. Muniz, 228 N.J. Super. 492, 496 (App. Div. 1988)). The purpose of instructing on lesser-included offenses is "to give juries a range of options so that they will not be forced to decide

28

between a conviction for a crime more serious than the one committed or no conviction at all."  State v. Bell, 241 N.J. 552, 562 (2020) (quoting State v. Short, 131 N.J. 47, 58 (1993)).  However, "[t]he determination of whether an offense is included within an offense charged is not open-ended."  Thomas, 187 N.J. at 131.

N.J.S.A. 2C:1-8(e) provides "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."  Therefore, "whether an included offense charge is appropriate requires (1) that the requested charge satisfy the definition of an included offense set forth in N.J.S.A. 2C:1-8(d), and (2) that there be a rational basis in the evidence to support a charge on that included offense."  Thomas, 187 N.J. at 131.

The record shows defendant moved to have the trial court instruct the jury to also consider the offense of conspiracy to commit aggravated assault as a lesser-included offense of murder, not as a related offense.  Conspiracy to commit aggravated assault is not a lesser-included charge of murder because the charges do not share the same elements.  Murder, unlike conspiracy to commit aggravated assault, requires the death of a person.  We reject defendant's argument that there was a rational basis for charging conspiracy to commit

aggravated assault, specifically:  that it was Terrell's idea to go to the Rose house to retaliate against Isaac and that defendant accompanied the Bundy brothers to attack Isaac.  N.J.S.A. 2C:1-8(d) explicitly provides that when one seeks a lesser-included charge involving "a less serious injury or risk of injury," it must be "to the same person."

We conclude the trial court did not err in rejecting the defense request to charge the lesser-included offense of conspiracy to commit aggravated assault.

ii.

Concerning defendant's related offense theory, we note defendant did not request a charge for conspiracy to commit aggravated assault as a related offense to murder.  He sought the charge as a lesser-included offense.  The trial court was not required to sua sponte charge the jury under these circumstances.  "In contrast to lesser-included offenses, trial courts are never required to charge a jury sua sponte on related offenses."  Alexander, 233 N.J. at 144 (citing State v. Maloney, 216 N.J. 91, 107-08 (2013)).

"[W]hether offenses are related is not a function of a comparison of statutory elements.  Instead, the focus is whether the offense charged and the related offense share a common factual nucleus."  Thomas, 187 N.J. at 130.  See N.J.S.A. 2C:1-8(a) ("When the same conduct of a defendant may establish the

commission of more than one offense, the defendant may be prosecuted for each such offense." (emphasis added)).

Here, the offense of conspiracy to commit aggravated assault is not related to the offense of murder because they do not share a factual nucleus; the two charges relate to different alleged conduct and separate victims. Defendant was charged with murder for shooting Atiba. The charge of conspiracy to commit aggravated assault does not relate to that conduct, nor does it relate to the death of Atiba. The charge of conspiracy to commit aggravated assault relates solely to the alleged plan to travel to the Rose house to assault Isaac. There is no evidence defendant planned to, or agreed to, assault Isaac. Indeed, there is no evidence that defendant assaulted Isaac.

Because the charge of conspiracy to commit aggravated assault does not share a "common factual background" or " a common factual nucleus" with the charge of murder in the present case, they are not related offenses. We conclude there is no error based on defendant's related offense argument.

## D.

For the first time before us, defendant argues he was denied a fair trial because of the prosecutor's improper comments during summation. He argues that "the location of the shooter was critical to determining who shot Atiba."

31

According to defendant, the prosecutor nevertheless told the jury "the damage to the doorway and the location of the casings definitively showed that the shooter was standing on the street or sidewalk, not the porch." Because defendant claims that the evidence was ultimately "inconclusive" on that issue, he argues "[t]he prosecutor's assertions were unsupported by the record, unfairly bolstered the State's case, and violated [his] rights to due process and a fair trial."

We disagree.

When opposing counsel fails to object to the complained-about comments during summation, those remarks are viewed for plain error. R. 1:7-2; R. 2:10-2. Under that standard, an unchallenged error constitutes plain error if it was "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. "Thus, the error will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached." State v. R.K., 220 N.J. 444, 456 (2015).

In criminal trials, prosecutors play a dual role: vigorously representing the State's interests while assuring the defendant is treated fairly, and that justice is done. Williams, 244 N.J. at 606-07. In considering the issue of prosecutorial misconduct, we must first determine whether misconduct occurred. Frost, 158 N.J. at 83. Where such misconduct is identified, reversal is not warranted unless

A-0931-23

the misconduct is "so egregious as to deprive defendant of a fair trial." Williams, 244 N.J. at 608. This means the prosecutor's conduct must have been clearly and unmistakenly improper and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." Ibid. Even if the prosecutor's comments "could be termed questionable," a new trial is not warranted unless the comments are "sufficiently severe" to show a clear potential for prejudice. Wakefield, 190 N.J. at 440.

Prosecutors are "expected to make vigorous and forceful closing arguments to juries." Frost, 158 N.J. at 82. They "are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." Ibid. Still, a prosecutor's summation "must be limited to the facts in evidence and inferences reasonably to be drawn therefrom." State v. Bey, 129 N.J. 557, 620 (1992). Prosecutors are permitted to respond to arguments raised by defense counsel as long as they do not stray beyond the evidence. State v. Munoz, 340 N.J. Super. 204, 216 (App. Div. 2001).

Counsel may not misstate the evidence nor distort the factual picture. Geler v. Akawie, 358 N.J. Super. 437, 467 (App. Div. 2003). Counsel is, however, permitted to argue from the evidence any conclusion the factfinder is

33

free to reach. Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999). He or she "may draw conclusions even if the inferences . . . are improbable, perhaps illogical, erroneous or even absurd, unless they are couched in language transcending the bounds of legitimate argument or there are no grounds for them in the evidence." Ibid.

A prosecutor is given great leeway in his or her comments, and he or she is allowed to be forceful. State v. Pindale, 249 N.J. Super. 266, 285 (App. Div. 1991). While it is true that the prosecutor cannot impassion a jury or incite emotions, a prosecutor is allowed to comment on the evidence which they intend to prove at trial. Wakefield, 190 N.J. at 442. See also State v. Williams, 113 N.J. 393, 453 (1988) (finding a prosecutor cannot resort to improper appeal to the jury's emotions). Indeed, "[e]motional appeals have the capacity to shift the jury's attention from the evidence and produce a verdict fueled by emotion rather than a dispassionate analysis of the evidence." State v. Black, 380 N.J. Super. 581, 595 (App. Div. 2005).

In most cases, a fleeting remark will not constitute grounds for reversal. State v. Gorthy, 226 N.J. 516, 540 (2016). "Trials, particularly criminal trials, are not tidy things. The proper and rational standard is not perfection; as devised and administered by imperfect humans, no trial can ever be entirely free of even

34

the smallest defect.  Our goal, nonetheless, must always be fairness."  State v. R.B., 183 N.J. 308, 333-34 (2005).

We conclude defendant's argument is without merit because the trial court properly instructed the jury that counsels' argument is not evidence, and defendant's characterization of the State's summation is not consistent with the record.  We comment briefly.

Prior to commencement of the trial, the court told the jury that what the attorneys said to them in openings and summation was not evidence.  This was part of the court's general instruction to the jury.  We presume the jury followed the court's clear direction and did not treat either counsel's argument during summation as evidence.  State v. Santamaria, 236 N.J. 390, 413 (2019).

Defendant also contends the State "told the jury that the damage to the doorway and the location of the casings definitively showed that the shooter was standing on the street or sidewalk, not the porch."  This claim is not reflected in the record.  The relevant portion of the prosecutor's summation states:

> We have the damage to the door.  Okay?  The State would argue the damage to that door was not caused by somebody standing right there on the porch. That's something hitting from quite a distance.  The casings also being on the street, both of them being on the street, that probably gets us to beyond a reasonable doubt that the shooter was on the street.  Sidewalk, street, that area.  Again, it's not a bullet from close

A-0931-23

range, right next to him, or right at the doorway. Then we know where the shooter was.

[(Emphasis added).]

The above passage demonstrates the State's comments were argument, not an attempted recitation of the evidence presented at trial. The comments were fair commentary on the evidence presented at trial. In closing argument, counsel for either side is permitted to argue from the evidence any conclusion that the factfinder is free to reach, and may draw any conclusion even if "improbable," "illogical, erroneous or even absurd," provided that there is some basis in the evidence to support that conclusion. Colucci, 326 N.J. Super. at 177.

E.

Defendant also argues cumulative error. We do not agree.

When a defendant raises a claim of cumulative error, the court must assess whether the defendant received a fair trial by considering "the impact of the trial errors on defendant's ability to present a defense, and not just excuse error because of the strength of the State's case." State v. Jenewicz, 193 N.J. 440, 473 (2008). "[E]ven when an individual error or series of errors does not rise to reversible error, when considered in combination, their cumulative effect can cast sufficient doubt on a verdict to require reversal." Ibid. "When 'legal errors are manifest that might individually not be of such magnitude to require reversal

36

but which, considered in their aggregate have caused [a party] to receive less than a fair trial,' a new trial is warranted." Barber v. ShopRite of Englewood & Assocs., 406 N.J. Super. 32, 53 (App. Div. 2009) (alteration in original) (quoting Eden v. Conrail, 175 N.J. Super. 263, 267 (App. Div. 1980)). See also Pellicer ex rel. Pellicer v. St. Barnabas Hosp., 200 N.J. 22, 53 (2009); Wakefield, 190 N.J. at 538 (holding "the predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair").

Because defendant raises the same alleged errors that we have addressed, he has not established any error on the part of the trial court, let alone cumulative error.

F.

Finally, defendant challenges his sentence. He contends the sentencing court committed error when it: failed to consider his youth when assessing the relevant factors; improperly found aggravating factors one and nine; and should have merged count two with count one.

The standard of review is "one of great deference and judges who exercise discretion and comply with the principles of sentencing remain free from the fear of second guessing." State v. McGuire, 419 N.J. Super. 88, 160 (App. Div.

37

2011) (quoting State v. Dalziel, 182 N.J. 494, 501 (2005)). "In conducting the review of any sentence, appellate courts always consider whether the trial court has made findings of fact that are grounded in competent, reasonably credible evidence and whether the factfinder [has] appl[ied] correct legal principles in exercising its discretion." State v. Blackmon, 202 N.J. 283, 297 (2010) (alterations in original) (quoting State v. Roth, 95 N.J. 334, 363 (1984)). "The reviewing court must not substitute its judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014). It must affirm the sentence unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (quoting Roth, 95 N.J. at 364-65).]

In sentencing a defendant, the "trial court should identify the relevant aggravating and mitigating factors, determine which factors are supported by a preponderance of the evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence." State v. O'Donnell, 117 N.J. 210, 215

(1989). Trial courts "are given wide discretion so long as the sentence is within the statutory framework." Dalziel, 182 N.J. at 500.

"The fundamental principle is that an appellate court should not second-guess a trial court's finding of sufficient facts to support an aggravating or mitigating factor if that finding is supported by substantial evidence in the record." O'Donnell, 117 N.J. at 216.

The court sentenced defendant to a forty-year term of imprisonment with an eighty-five-percent period of parole ineligibility under NERA on count one, the murder conviction. The court merged counts two and three but still imposed concurrent sentences of five years on each count.

In sentencing defendant, the court found four aggravating factors: one (N.J.S.A. 2C:44-1(a)(1) ("The nature and circumstances of the offense, and the role of the actor in committing the offense, including whether or not it was committed in an especially heinous, cruel, or depraved manner")); three (N.J.S.A. 2C:44-1(a)(3) ("The risk that the defendant will commit another offense")); six (N.J.S.A. 2C:44-1(a)(6) ("The extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted")); and nine (N.J.S.A. 2C:44-1(a)(9) ("The need for deterring the

defendant and others from violating the law")).  The court assigned substantial weight to all those aggravating factors.

The court found seven mitigating factors:  three (N.J.S.A. 2C:44-1(b)(3) ("The defendant acted under a strong provocation")); seven (N.J.S.A. 2C:44-1(b)(7) ("The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense")); eight (N.J.S.A. 2C:44-1(b)(8) ("The defendant's conduct was the result of circumstances unlikely to recur")); nine (N.J.S.A. 2C:44-1(b)(9) ("The character and attitude of the defendant indicate that the defendant is unlikely to commit another offense")); eleven (N.J.S.A. 2C:44-1(b)(11) ("The imprisonment of the defendant would entail excessive hardship to himself or his dependents")); thirteen (N.J.S.A. 2C:44-1(b)(13) ("The conduct of a youthful defendant was substantially influenced by another person more mature than the defendant")); and fourteen (N.J.S.A. 2C:44-1(b)(14) ("The defendant was under 26 years of age at the time of the commission of the offense")).  The court assigned minimal weight to mitigating factors three, seven, eight, nine, eleven, and thirteen, but assigned substantial weight to mitigating factor fourteen, finding defendant was nineteen years old when he committed the murder of Atiba Rose and, therefore, "is entitled to

substantial weight on the factor of his age," as "[h]e is not yet a fully developed man."  The court found the aggravating factors outweighed the mitigating factors.

Looking at the entirety of the record, we cannot conclude the sentencing court abused its discretion by imposing a forty-year term of imprisonment.  The court properly considered defendant's age,[4] and appropriately considered and balanced the aggravating and mitigating factors.  The court's findings at sentencing were well-supported by the credible evidence in the record.  However, the court erred by failing to merge the possession-for-an-unlawful-purpose conviction into the murder conviction.  See State v. Tate, 216 N.J. 300, 312 (2013) ("[W]hen the only unlawful purpose in possessing the gun is to use it to commit the substantive offense, merger is required.") (quoting State v. Diaz, 144 N.J. 628, 636 (1996)).

---

[4] We note the undisputed fact that defendant was nineteen years old at the time of the crimes.  It follows that he was beyond the threshold age for adulthood in criminal sentencing.  State v. Ryan, 249 N.J. 581, 600 n.10 (2022).  Consequently, defendant is not entitled to the constitutional protections afforded to juvenile offenders.

A-0931-23

On this limited issue, we remand to the sentencing court to correct the judgment of conviction to merge the possession of a weapon for an unlawful purpose charge (count two) into count one.

Affirmed. We remand solely for the court to correct the judgment of conviction as indicated. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0931-23